**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| BRADLY STINSON,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 4:25-CV-01875<br><br>JUDGE DONALD C. NUGENT<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Bradly Stinson seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I. Procedural History

Mr. Stinson filed his DIB and SSI applications on April 11, 2023.[1] (Tr. 17, 88, 96, 258-66, 267-74.) He alleged disability beginning on January 19, 2021. (Tr. 17, 88, 96, 260, 267.) He alleged disability due to right knee surgery and bulging disc. (Tr. 129, 137, 301.) His

[1] Plaintiff filed prior applications for DIB and SSI in 2007, 2010, 2013, and 2021 which were denied at various levels of administrative review. (Tr. 17, 20.)

applications were denied at the initial level (Tr. 124-29) and upon reconsideration (Tr. 134-41). He then requested a hearing. (Tr. 142-43.)

A hearing was held before an Administrative Law Judge ("ALJ") on July 30, 2024. (Tr. 36-65.) The ALJ issued an unfavorable decision on August 16, 2024, finding Mr. Stinson had not been under a disability within the meaning of the Social Security Act from January 19, 2021, through the date of the decision. (Tr. 14-35.) Mr. Stinson's request for review by the Appeals Council was denied on July 18, 2025, making the ALJ's August 16, 2024 decision the final decision of the Commissioner. (Tr. 1-6.)

Plaintiff filed the instant Complaint on September 8, 2025 (ECF Doc. 1), and the matter is fully briefed (ECF Docs. 9, 10, 11). Plaintiff raises the following assignments of error:

(1) The ALJ indicated that he intended to adopt the opinion of Stephanie Kopey, D.O., Plaintiff's pain management/rehabilitation specialist, with regard to Plaintiffs physical restrictions, but Dr. Kopey assessed standing limitations that were not accounted for in the RFC, yielding a result that is not supported by substantial evidence; and

(2) The ALJ improperly denied Plaintiff's request for a psychological CE, especially in view of the prior decision, which found he is only able to perform one to two step routine procedures with instructions given orally, and Dr. Kopey's recommendation that a mental health consult be obtained.

(ECF Doc. 9, pp. 5, 10-16; ECF Doc. 11, pp. 1-4.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Stinson was thirty-seven years old on the alleged disability onset date, making him younger individual under Social Security regulations on the alleged onset date. (Tr. 29.) He has a tenth-grade education (Tr. 44) and past work experience as an extrusion press operator and lead worker (Tr. 28, 44-45). He last worked in 2021. (Tr. 20, 43.)

**B. Medical Evidence**[2]

Mr. Stinson presented to the Mercy Health emergency room on January 19, 2021, following a head on automobile collision that caused neck, back, and knee pain. (Tr. 542-46.) Cervical spine imagining showed mild degenerative changes of the cervical spine with posterior disc protrusion at C3-C4 (Tr. 544), and right knee imaging showed fractures of the right distal femur and right proximal tibia (Tr. 551). Mr. Stinson was admitted to the hospital and Ian J. Walton, D.O., performed a right knee arthroplasty and repair of femur and tibial fractures on January 20, 2021. (Tr. 520-21, 556-58.)

Mr. Stinson returned to Dr. Walton on September 8, 2021. (Tr. 481.) He was "weightbearing as tolerated" and used a walker but was planning to transition to a cane soon. (*Id.*) He said his "pain [wa]s at minimum but . . . he still ha[d] daily pain." (*Id.*) He also reported occasional sharp pain in the knee with numbness into the leg while driving. (*Id.*) Dr. Walton referred Mr. Stinson to physical medicine rehabilitation for his complaints of lumbar radiculopathy. (Tr. 485.)

On October 8, 2021, Mr. Stinson presented to Stephanie Kopey, D.O., at Mercy Health Howland Physical Medicine and Rehabilitation. (Tr. 475-78.) He described the pain in his right leg as numbness and tingling without radiation. (Tr. 476.) He said he had tried treating his pain with physical therapy and medication. (*Id.*) A review of symptoms was positive for anxiety, depression, suicidal ideation, and gait disturbance. (Tr. 477.) Mr. Stinson's mood and affect were appropriate on examination. (*Id.*) Physical examination showed increased cervical lordosis, right lumbar paraspinal tenderness, diminished lumbar range of motion, negative straight leg raise, normal gait, normal heel and toe walk, normal tandem walk, and normal

[2] The medical evidence summarized herein is not exhaustive and is generally limited to evidence cited by the parties and ALJ that is relevant to the legal and factual issues before the Court.

strength and sensation except for diminished sensation to light touch at the right lateral leg and right dorsal foot. (Tr. 477-78.) Mr. Stinson "was able to rise from a chair and squat without difficulty." (Tr. 478.) Mr. Stinson was diagnosed with right leg paresthesias and chronic low back pain with right-sided sciatica. (*Id.*) Dr. Kopey ordered an EMG. (*Id.*)

Electrodiagnostic testing was completed on October 20, 2021. (Tr. 472-74.) The testing showed evidence of lumbosacral radiculopathy at the right L5 and S1 with active denervation that was of "subacute" duration and "moderate" severity. (Tr. 474.)

Mr. Stinson returned to Dr. Kopey for follow-up regarding his right leg pain on June 13, 2022. (Tr. 454.) Examination findings were similar to those recorded at his October 2021 visit. (*Compare* Tr. 456-57 *with* Tr. 477-78.) Mr. Stinson was diagnosed with polyradiculopathy and Dr. Kopey ordered a lumbar MRI and physical therapy. (Tr. 457.) The lumbar MRI showed mild central canal and lateral recess stenoses at L5-S1 with moderate neural foraminal stenoses and mild neural foraminal stenoses at L4-5. (Tr. 449.)

In September 2022, Mr. Stinson underwent lumbar epidural steroid injections. (Tr. 420.) Mr. Stinson returned to Dr. Kopey on October 17, 2022, reporting 100% relief from the injections for one week, after which his pain returned to baseline level. (*Id.*) On examination, Mr. Stinson was in no apparent distress. (Tr. 422.) He demonstrated an active range of motion in the spine and extremities. (*Id.*) Straight leg raise testing was negative. (*Id.*) Mr. Stinson's gait and lower extremity reflexes were normal, and no focal sensorimotor deficits were observed. (*Id.*) He was diagnosed with spondylolisthesis at L5-S1, chronic bilateral low back pain with right-sided sciatica, and bulging lumbar disc. (*Id.*) Mr. Stinson requested a "letter for child support regarding his ability to work." (Tr. 420.) Dr. Kopey opined that Mr. Stinson could: hear, speak, remember, understand, concentrate, interact, and adapt without limitation; lift/carry

up to 25 pounds at the waist level; handle objects without limitation; sit for a maximum of 60-minute intervals and a maximum of 8 hours per day; stand for a maximum of 60-minute intervals and a total of 8 hours per day; be in the upright position either standing or walking for a total of 8 hours a day; and "walk independently community distances without an assistive device." (Tr. 422.) Dr. Kopey also stated that Mr. Stinson should avoid repetitive bending, lifting, twisting, and prolonged overhead work. (*Id.*)

Mr. Stinson received a second round of injections in November 2022, with the same results. (Tr. 411.) In December 2022, Dr. Kopey referred Mr. Stinson for a neurosurgical consultation. (Tr. 413.) On January 5, 2023, Mr. Stinson saw Andrea Chamczuk, M.D., in Mercy Health's neurosurgical clinic. (Tr. 404.) Dr. Chamczuk reviewed Mr. Stinson's diagnostic imaging and explained that the diagnostic findings were "incongruent with his complaints." (Tr. 407.) She provided a referral for a neurology evaluation and for an EMG for re-evaluation of his complaints. (*Id.*) An EMG performed in February showed acute moderate polyradiculopathy on the right at L5-S1. (Tr. 386.)

On July 7, 2023, Mr. Stinson sought a second opinion from Frank N. Grisafi, M.D., at Triad Health Services, LLC regarding his right lower extremity pain. (Tr. 1058.) Dr. Grisafi did not recommend surgery. (Tr. 1063.) He referred Mr. Stinson to PM&R for evaluation and an SI transforaminal epidural injection. (Tr. 1059.)

On September 1, 2023, Mr. Stinson saw pain management provider Michael Engle, M.D., at Southwoods Physician Services. (Tr. 1063-65.) On examination, Mr. Stinson's range of motion was diminished in the lumbar spine with pain during extension rotation and somewhat diminished with flexion. (Tr. 1064.) His strength throughout the lower extremities was 5/5. (*Id.*) He had a mildly positive straight leg raise on the right and altered sensation throughout the

right leg in multiple dermatomal and peripheral nerve distributions. (*Id.*) Dr. Engle concluded that Mr. Stinson's pain was "primarily facet agenic" without a lot of radicular symptoms. (Tr. 1065.) He recommended a medial branch block targeting the bilateral L3, 4, 5 levels, possibly followed by radio frequency ablation rather than an SI epidural. (*Id.*)

Dr. Engle performed the medial branch block on September 22, 2023. (Tr. 1066-69.) Mr. Stinson reported "at least 80% improvement in overall functioning while doing aggravating activities with a pain level that went down to 3 out of 10 during the anesthetic timeframe" (Tr. 1090 (bracket in original removed)) at a follow-up appointment with Alexa Tkacik, NP, at Dr. Engle's office on October 6, 2023 (Tr. 1089-92). He reported that his pain in the bilateral lower back and was worse with prolonged sitting and bending. (*Id.*) The following "additional comments" were noted by NP Tkacik:

> We had an extensive conversation regarding his imaging, anatomy of the lumbar spine, and medial branch block and RFA procedure. Patient stated he did not agree with what we were doing, "you're not fixing the problem this is bull shit you're just causing me more pain and problems, I need the problem fixed". Patient was again educated and stated he did not agree with what we're doing and said we're prolonging his pain. Patient was very argumentative, disrespectful, and was vaping throughout the visit. Patient stated he was happier with Dr. [K]opey and I suggested returning to her care. Patient then states "fine kick me out, see what happens".

(*Id.*) Mr. Stinson was discharged as a patient after NP Tkacik spoke with Dr. Engle. (*Id.*)

On November 3, 2023, Mr. Stinson presented to Dr. Kopey for a Disability Determination Examination.[3] (Tr. 1095-1107.) Mr. Stinson reported he could sit for one hour, stand for thirty minutes, and lift fifteen pounds. (Tr. 1102.) On examination, Mr. Stinson was in no apparent distress. (Tr. 1103.) His intellect appeared average and his mood and affect were

[3] While Dr. Kopey previously treated Mr. Stinson, she noted in her report that: (1) she explained to Mr. Stinson that "th[e] examination was for evaluation purposes only and that no physician-patient relationship exist[ed]" (Tr. 1100); she "ha[d] not provided care for this claimant" and saw him "one time on 11/3/2023, for the purpose of a disability determination" (Tr. 1104); and (3) [t]he opinions expressed [we]re based solely on the information provided to [her] and on the history and medical examination performed on 11/3/2023" (*id.*).

appropriate. (*Id.*) Dr. Kopey observed a reduced range of motion with forward flexion and extension in the lumbar spine (Tr. 1097), reduced range of motion with pain in the right knee with flexion extension (Tr. 1098, 1103), and tenderness to palpation in the lumbar paraspinals and right distal thigh and proximal leg (Tr. 1103). Sensation and coordination were intact and reflexes were normal and symmetric. (*Id.*) Mr. Stinson's gait was antalgic, but with no visible limp and without the need for an assistive device to stand or walk. (*Id.*) He was able to walk short and long distances on level and uneven surfaces. (*Id.*) He could dress himself independently and reach overhead. (*Id.*)

Dr. Kopey opined that Mr. Stinson could: hear, speak, remember, understand, concentrate, interact, and adapt without limitation; lift/carry up to 25 pounds at the waist level; handle objects without limitation; sit for a maximum of 60-minute intervals and a maximum of 8 hours per day; stand for a maximum of 60-minute intervals and a total of 8 hours per day; be in the upright position either standing or walking for a total of 8 hours a day; and "walk independently community distances without assistive device." (*Id.*) She also opined that Mr. Stinson should avoid repetitive bending, lifting, and twisting (*id.*), and noted: "The claimant does report psychiatric conditions as a cause of disability. A psychiatric consultative examination is recommended to further evaluate." (Tr. 1104).

Mr. Stinson saw Dr. Kopey for appointments in January and February 2024. (Tr. 1173-75, 1167-69.) At his January 18, 2024 appointment. Mr. Stinson reported he was on medical marijuana, but also felt better when he was taking Lyrica and Baclofen. (Tr. 1174.) He reported that providers at Southwoods had stopped his Lyrica and Baclofen. (*Id.*) Dr. Kopey ordered cervical and lumbar imaging and an EMG, and she prescribed Lyrica and Baclofen. (Tr. 1175.)

Mr. Stinson was in no apparent distress at his February 16, 2024 appointment with Dr. Kopey. (Tr. 1168.) He demonstrated active full range of motion in the spine and extremities, cervical and lumbar paraspinal tenderness, and positive straight leg raise on the right. (*Id.*) His gait was antalgic. (*Id.*) Mr. Stinson ambulated with a cane, but the cane was not required. (*Id.*) Right knee extension was 4/5. (*Id.*) Otherwise, there were no focal sensorimotor deficits. (*Id.*) Reflexes in the upper and lower extremities were 3+ and symmetric. (*Id.*) He was diagnosed with polyradiculopathy, spondylolisthesis at L5-S1, cervical stenosis of the spinal canal, and cervical spondylosis. (*Id.*) Dr. Kopey refilled Mr. Stinson's prescription for Lyrica and recommended epidural steroid injections. (*Id.*) With respect to Mr. Stinson's "work ability,"[4] Dr. Kopey stated that he could: hear, speak, remember, understand, concentrate, interact, and adapt without limitation; lift/carry up to 10 pounds at the waist level; handle objects without limitation; sit for a maximum of 60-minute intervals and a maximum of 8 hours per day; stand for a maximum of 10-minute intervals and a total of 8 hours per day; be in the upright position either standing or walking for a total of 8 hours a day; "walk independently community distances without assistive device." (Tr. 1168.) She also stated that he should avoid repetitive bending, lifting, twisting, and prolonged overhead work. (Tr. 1168-69.)

**C. Hearing Testimony**

Mr. Stinson testified in response to questions from the ALJ and his attorney at the July 30, 2024 hearing. (Tr. 43-51.) A Vocational Expert ("VE") also testified. (Tr. 51-64.) The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination (Tr. 22, 54), could perform representative positions in the national economy, including storage facility rental clerk, parking

[4] Mr. Stinson requested a "letter for work restrictions." (Tr. 1167.)

lot attendant, and cafeteria attendant (Tr. 54-55). The VE also testified that the identified jobs would remain available if the described individual must also be allowed to alternate between sitting and standing at will, provided that the individual did not leave his workstation and was not off task more than ten percent of the workday. (Tr. 55-56.)

## III. Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant

work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920[5]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform other work available in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less

[5] The DIB and SSI regulations cited herein are generally identical. For convenience, in most instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) (alteration in original). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

### A. First Assignment of Error: The ALJ Did Not Fail to Reconcile a Conflict Between Dr. Kopey's Medical Opinion and the RFC

In his first assignment of error, Mr. Stinson argues that the ALJ erred in analyzing Dr. Kopey's November 3, 2023 medical opinion because the ALJ found the opinion "persuasive" but did not explain why he failed to incorporate the "standing limitations which [Dr. Kopey] assessed" in the RFC. (ECF Doc. 9, pp. 11-13; ECF Doc. 11, pp. 1-2.) In response, the Commissioner argues that the standing limitations in Dr. Kopey's opinion "are actually less restrictive than the ALJ's," and further that additional VE testimony establishes jobs would have remained available even with more restrictive standing limitations. (ECF Doc. 10, pp. 6-7.)

"The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician," *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Accordingly, an ALJ is "not required to recite the medical opinion of a physician verbatim in his [RFC] finding," *id.*, and even where an opinion was given great weight under prior regulations, "there [was] no requirement that [the] ALJ adopt a state agency psychologist's opinions verbatim; nor [was] the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). But where an ALJ's RFC assessment "conflicts with an opinion from a medical source," he "must explain why the opinion was not adopted." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34478 (July 2, 1996).

Effectively, Mr. Stinson argues that the ALJ did not comply with SSR 96-8p because he adopted an RFC that conflicts with Dr. Kopey's November 2023 opinion but did not then "explain why the opinion was not adopted." *See id.* Having reviewed the plain language of both the medical opinion and the RFC, the undersigned finds this argument is not well taken.

In pertinent part, Dr. Kopey opined that Mr. Stinson: "can sit for a maximum of 60 minute intervals, for a maximum of 8 hours per day; can stand for a maximum of 60 minute intervals for a total of 8 hours per day; can be in the upright position either standing or walking for a total of 8 hours a day." (Tr. 1104.) Focusing on the language limiting him to standing "for a maximum of 60 minute intervals" (*id.*), Mr. Stinson argues that Dr. Kopey's opinion limits his "standing to no longer than 60 minutes without interruption before needing to change positions" (ECF Doc. 9, p. 12). But the Commissioner highlights Dr. Kopey's additional opinion language finding Mr. Stinson can stand "for a total of 8 hours per day" and "can be in the upright position either standing or walking for a total of 8 hours a day" (Tr. 1104), arguing that "Dr. Kopey's limitations, when viewed as a whole are actually less restrictive" than the RFC limitation to standing or walking "for about 6 hours over the course of an ordinary 8-hour workday" (ECF Doc. 10, p. 6; Tr. 22). Having reviewed the same language, the undersigned finds no clear conflict between the standing limitations in Dr. Kopey's opinion and the ALJ's RFC.

The ALJ's finding that Mr. Stinson can perform light work, which he defined to include an ability to "stand/walk for about 6 hours over the course of an ordinary 8-hour workday" (Tr. 22), does not clearly conflict with Dr. Kopey's opinion that he "can stand for a maximum of 60 minute intervals for a total of 8 hours per day" and "can be in the upright position either standing or walking for a total of 8 hours a day" (Tr. 1104). The RFC explicitly provides that Mr. Stinson will not be required to stand or walk for two of the eight hours in his workday, and no evidence or vocational testimony has been identified to show that those two hours would be insufficient to accommodate the 60-minute standing intervals contemplated in Dr. Kopey's opinion.[6] Without

[6] Further, as the Commissioner observes (ECF Doc. 10, p. 7), the VE went on to testify that the same jobs would remain available if the ALJ added an RFC limitation permitting the individual to alternate between sitting and standing at will, while remaining at the workstation and on task for 90% of the workday (Tr. 55-57).

an established conflict between the opined limitations and the RFC, the ALJ need not "explain why . . . [Dr. Kopey's] opinion was not adopted" under SSR 96-8p. *See* 61 Fed. Reg. at 34478.

For the reasons set forth above, the undersigned concludes that Plaintiff has failed to show that the ALJ erred in his Step Four analysis, or failed to comply with SSR 96-8p, when he adopted an RFC finding Mr. Stinson capable of standing or walking for six hours in an eight-hour workday. Accordingly, the undersigned finds the first assignment of error lacks merit.

**B. Second Assignment of Error: ALJ Did Not Err in Denying Plaintiff's Request for a Psychological Consultative Examination**

In his second assignment of error, Mr. Stinson asserts that the ALJ failed in his duty to develop the record when he denied Mr. Stinson's request for a consultative psychological examination. (ECF Doc. 9, pp. 14-16; ECF Doc. 11, pp. 2-4.) First, he argues that the ALJ erred when he "failed to mention that [a prior] ALJ in 2012 found that Plaintiff is only able to perform one to two step routine procedures with instructions given orally," limitations Mr. Stinson describes as "intellectual deficits" that are not likely to "wax and wane across the years, as might be the case with Plaintiff's affective and personality disorders." (ECF Doc. 9, p. 15.) Second, he argues Dr. Kopey's recommendation "weighed in favor of granting Plaintiff's request." (*Id.*) The Commissioner argues that the ALJ "correctly explained" that he was not bound by the 2012 ALJ decision, and provided appropriate evidentiary support and explanations for denying Mr. Stinson's request for a psychological consultative examination. (ECF Doc. 10, pp. 7-9.)

At the hearing level, after the denial of benefits on initial review and reconsideration, the Sixth Circuit explains that an ALJ must act "as an examiner charged with developing the facts" and ensure that every claimant receives a full and fair hearing. *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (quoting *Richardson v. Perales*, 402 U.S. 389, 411 (1971)). Nevertheless, "while the ALJ must ensure that every claimant receives 'a full and

fair hearing,' the ultimate burden of proving entitlement to benefits lies with the claimant." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (quoting *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); citing 20 C.F.R. § 404.1512(a)), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785 (2023); *see also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008); 20 C.F.R. § 416.912(a)(1) ("[Y]ou have to prove to us that you are blind or disabled."); 20 C.F.R. § 416.945(a)(3) ("[Y]ou are responsible for providing the evidence we will use to make a finding about your residual functional capacity.").

In special circumstances, the Sixth Circuit has held that an ALJ must "exercise a heightened level of care" in developing the record. *Lashley*, 708 F.2d at 1051-52. Heightened care is required for unrepresented claimants who are unfamiliar with hearing procedures and incapable of presenting an effective case. *See Wilson*, 280 F. App'x at 459 (citing *Lashley*, 708 F.2d at 1051-1052); *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing *Duncan*, 801 F.2d at 856). In contrast, heightened care is not required for unrepresented claimants who demonstrate a grasp of the proceedings and adequately present their cases, *see Moats*, 42 F.4th at 564; *Wilson*, 280 F. App'x at 459, and certainly not for claimants who are represented by counsel at the hearing level, *see Stevenson v. Kijakazi,* No. 5:20CV2688, 2022 WL 4551590, at *13 (N.D. Ohio Sept. 29, 2022). In this case, Mr. Stinson was represented by counsel since April 2023 (Tr. 119-22), before his applications were filed (Tr. 255-57), and the ALJ was not required to exercise a heightened level of care to develop the record.

Turning to whether the ALJ had a specific duty to order a consultative examination, the undersigned observes that Social Security regulations give ALJs broad discretion to determine whether and when to order a consultative examination. The regulations explain that ALJs "*may*

decide to purchase a consultative examination," 20 C.F.R. § 404.1519a(a) (emphasis added), highlighting the following situations where an examination may be ordered:

> (b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> > (1) The additional evidence needed is not contained in the records of your medical sources;
> >
> > (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> >
> > (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> >
> > (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); *see also* 20 C.F.R. § 404.1512(b)(2) (providing that the Commissioner "may order a consultative examination" when "a source is not productive, is uncooperative, or is unable to provide certain tests or procedures").

The Sixth Circuit has also confirmed that it is within an ALJ's "discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *see also Cox v. Comm'r of Soc. Sec.*, 615 F.App'x 254, 263 (6th Cir. 2015) (finding an "ALJ's duty to develop the record" does not "require the ALJ to order a consultative examination at all") (citations omitted).

In a pre-hearing brief, Plaintiff stated that he "experience[d] psychiatric symptoms that prevent[ed] him from maintaining the alertness, close attention, or coordination required of his past skilled or semiskilled work." (Tr. 371.) And he requested that a consultative examination be performed to "further develop the extent of [his] mental impairments" because "[his] medical records d[id] not fully describe the mental impairments from which [he] suffer[ed]." (Tr. 370.) The ALJ considered this request but found that "no reason exist[ed] for ordering a consultative psychological evaluation." (Tr. 21.) In support of this conclusion, the ALJ explained:

> In his pre-hearing memorandum, the claimant alleged having medically determinable and severe affective and personality disorders, and "psychiatric symptoms that prevent him from maintaining [workplace] alertness, close attention, or coordination," but the only evidence cited in support of these allegations is the ALJ finding made in 2012 that the claimant had severe affective and personality disorder impairments (C14E/2-3). Recognizing this lack of evidence, the claimant suggested that a consultative psychological evaluation could "further develop the extent of [his] mental impairments" (C14E/2).
>
> The undersigned has determined that the prior finding asserted by the claimant is not binding, and further, that it has no current record support, as there is no medical or other evidence of any medically determinable mental impairment or psychiatric symptoms. Moreover, the claimant did not assert any mental impairment or mental difficulties as a basis of disability when he filed the applications at issue (1E, 2E), and consistent therewith, the claimant specifically denied in his testimony having any limitation in his mental capacity for work. The undersigned therefore concludes that the claimant has no mental impairment requiring further development, and thus, that no reason exists for ordering a consultative psychological evaluation.

(*Id.*)

Consistent with the ALJ's findings, the record reflects that Mr. Stinson did not allege mental impairments in his disability benefits applications (Tr. 301, 322, 333) and testified at his administrative hearing that "no" he did not feel he had "conditions or limitations that make it hard to work," and "yes" he thought he "could work from a mental standpoint" (Tr. 48). Further, consistent with the ALJ's findings, Mr. Stinson has not identified records in evidence that establish a medically determinable psychiatric impairment during the disability period. Given

the lack of contemporaneous evidence of a severe mental impairment during the disability period, Mr. Stinson's failure to allege mental impairments in his applications (while represented by counsel), and his hearing testimony that he did not have mental conditions or limitations that made it hard for him to work, the undersigned concludes that the ALJ's stated reasons for declining Mr. Stinson's request for a consultative psychological examination were both clearly articulated and supported by substantial evidence. While the ALJ had discretion to order a consultative examination if "the evidence as a whole [wa]s insufficient to allow [him] to make a determination or decision on [Mr. Stinson's] claim," 20 C.F.R. § 404.1519a(b), he clearly and logically explained why he found the existing evidence sufficient to conclude that Mr. Stinson did not have functional limitations in his mental ability to work.

Mr. Stinson's assertion that an ALJ decision from 2012 found he had severe mental impairments and was "only able to perform one to two step routine procedures with instructions given orally" is inapposite. (ECF Doc. 9, p. 15.) The Sixth Circuit has made it clear that res judicata does not apply when a Social Security claimant applies for a new period of disability. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). Instead, ALJs are expected to provide a "fresh review of a new application for a new period of time." *Id.* at 934. Nevertheless, ALJs may honor "principles of res judicata" like "[f]inality, efficiency, and the consistent treatment of like cases" by "considering what an earlier judge found with respect to a later application and by considering that earlier record." *Id.*

Here, the ALJ acknowledged Mr. Stinson's prior ALJ decisions, including the 2012 decision (Tr. 17, 20), and explained how he considered the decisions as follows:

> Although the 2009 decision has not been made a part of the record, the 2012 decision referenced and adopted the residual functional capacity finding made in 2009 (C1A/12), and that finding is now more than 15 years old. There have been interim revisions to the Listings and other legal standards applicable herein, and the

> record is replete with new and material medical evidence that establishes additional/changed impairments, which warrant changed findings.

(Tr. 20). Thus, the ALJ observed that the RFC in the 2012 decision was adopted from a 2009 decision, making it "more than 15 years old," before noting that the legal standards had changed and finding that the current "record is replete with new and material evidence that establishes additional/changed impairments, which warrant changed findings." (*Id.*) The ALJ therefore honored principles of res judicata when he explained his reasons for discounting the findings in the 2012 ALJ decision, namely that the old findings are remote and that new law and material evidence "warrant changed findings." (*Id.*) The ALJ's reasoning with respect to mental impairments and/or limitations is further clarified in his stated reasons for denying the request for a consultative examination, i.e., the lack of evidence of a severe mental impairment, Mr. Stinson's failure to allege mental impairments in his applications, and Mr. Stinson's testimony that his mental conditions or limitations did not make it hard for him to work. (Tr. 21.)

A few of Mr. Stinson's additional arguments warrant comment. First, his assertion that the 2012 RFC limitation to one to two step routine tasks reflected "intellectual deficits" that are distinct from the symptoms of his "affective and personality disorders" lacks record support. (*See* ECF Doc. 9, p. 15.) The 2012 decision found his only severe impairments to be "affective disorder and personality disorder" (Tr. 71), meaning the RFC was necessarily based on the symptoms of those impairments.[7] Second, Mr. Stinson's argument that his testimony regarding his own mental limitations should not have been relied upon because he "has never worked at any job requiring complex or even detailed tasks" (ECF Doc. 11, p. 4) is contradicted by both the VE's classification of his extrusion press operator job as skilled work (Tr. 28, 53), and his own

[7] The 2012 decision noted a lack of medical evidence to support complaints of attention deficit hyperactivity disorder (ADHD) but did not mention allegations of any intellectual disorder. (Tr. 72.)

acknowledgement in a pre-hearing brief that he had "past skilled or semiskilled work" (Tr. 370-71). Finally, his argument that Dr. Kopey's recommendation of a consultative psychological examination "also clearly weighed in favor of granting Plaintiff's request" (ECF Doc. 9, p. 15) does not move the needle. The ALJ acknowledged Dr. Kopey's recommendation but explained that he was unpersuaded for the same reasons he had already discussed (Tr. 27), namely the lack of contemporaneous medical records, allegations, or testimony suggesting Mr. Stinson had severe mental impairments or functional limitations in his mental capacity for work (Tr. 21).

For the reasons set forth above, the undersigned concludes that the ALJ did not fail in his duty to develop the record when he denied Mr. Stinson's request for a consultative psychological examination. The ALJ explicitly considered the request and provided a reasoned explanation for denying the request that was supported by substantial evidence. Accordingly, the undersigned finds the second assignment of error lacks merit.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

October 7, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).